And the next case is Ronald Sellers v. Nationwide Mutual Fire Insurance Company. And Mr. Turner is here for Nationwide. And Mr. Edge is here for the Appellee. That's Kyle Turner for the Appellant. And H. Arthur Edge for the Appellee. And Mr. Turner, you may begin. Thank you, Your Honor. May it please the Appellant, Nationwide Mutual Fire Insurance Company. The district court erred when it denied Nationwide's motion in limine because with that denial it allowed the plaintiffs to present evidence of damages that a U.S. district court previously ruled manifested prior to the Nationwide policy period. To put this in context, this case is the third installment of a trilogy of cases about the defective construction of the Sellers' house. First, there is the state court action where the Sellers sued their general contractor, Mr. Garner, and the subcontractor, Mr. Durham, who is the Nationwide insured. The second case is the declaratory judgment action where it was determined that there was no coverage for the property damage to the Sellers' home because it manifested before the Nationwide policy period. And then the third is this case, direct action. And in this case, the Sellers filed a one-count complaint against Nationwide under 2723-2 seeking to recover insurance proceeds. And significantly, recovery under 2723-2 depends on the insurer's obligation to its insured. So in other words, the analysis here is for the Sellers in any capacity, whether individually or as Garner's assignee, to recover under the policy, Nationwide has to owe Durham coverage for those damages. And in this case, it's undisputed that Nationwide does not owe any coverage to Durham. And that's why the motion in limine should have been granted because by denying the motion in limine, it allowed the Sellers as plaintiffs to enter into evidence damages that the court, a U.S. District Court, had already ruled was not covered under the Nationwide policy. You just suggested something that I hadn't thought of. This is Judge Anderson talking. And I'm quite sure you didn't argue either in the District Court or on appeal. You just suggested that capacity in which Sellers sued should not make any difference because of the I don't believe you made that argument in the District Court or on appeal, did you? I believe that I did by saying that the foundational analysis is that Nationwide has to owe coverage to Durham before there can be a recovery. And I'm certainly comfortable with limiting the analysis to the Sellers as Garner's assignee because even in that capacity, Nationwide doesn't owe any coverage obligation to its insurer, to Mr. Durham. And so therefore, even when I say the Sellers, I'm sorry? The way you have litigated this case assumed that we were dealing in this case only with Sellers suing the insurance company in its capacity as assignee of Garner, correct? Yes. Yes, sir. Yes, Your Honor, that is correct. And I'm very comfortable with that because even as Garner's assignee, Nationwide still doesn't owe any coverage to Durham. And because it doesn't owe coverage to Durham, the Sellers as Garner's assignee cannot recover. That may be true as a matter of insurance law, but we're talking about preclusion. And the fact that Sellers was in that deck action, the declaratory judgment action, pursuing his own or their own individual claims makes this case a really hard preclusion issue. There are a lot of cases. In fact, the general rule is that a prior suit by a party in one capacity does not preclude that same party suing in another capacity. We have an old former Fifth Circuit case, Sayer v. Cruz, this binding on us where a father sued on his individual claim and later sued for his minor daughter. And the Fifth Circuit binding case held that the suit on behalf of his minor daughter was not precluded or barred by the decisions in that prior suit. None of y'all talk about that whole line of cases about capacity. In fact, I'm going to go ahead, if I might, and Judge Wilson, this is a long question, and you might consider whether you give them extra time because I don't talk very fast. This case is a bothersome case for this reason. It seems to me you, the insurance company, have a very narrow standard of review in asking us to reverse the district court's denial of your post-verdict motion to reconsider the no change of law. Intervening change of law might warrant consideration. No new evidence that might warrant it. So you are limited to demonstrating either manifest injustice or a clear error of law. And I'm kind of thinking that you have not come anywhere near showing manifest injustice. The insurance company trial lawyer in the court below was lackadaisical at best in presenting the preclusion issue and summary judgment didn't even present it in the opening summary judgment, only in the reply brief. Same thing a year later when the parties briefed they called issues identified by the district court. Again, your opening brief did not argue preclusion and only in the reply brief did you argue it. And in both cases, the reply brief was sparse with respect to preclusion. And then the thing that really the trial, and it was, the district court held a hearing on that on September the 10th, not 2018. And at the hearing, the district court repeatedly asked, and I'm quoting, quote, when did the privately attached vis-a-vis when the issues were being briefed and argued before Judge Green, which is of course the declaration, the deck action. The insurance counsel should have at that point pointed out the facts, namely that the assignment occurred well after the deck action was filed, but well before the summary judgment motion was filed in the deck action. So that the very question the district court asked, when did the assignment occur vis-a-vis when the actual litigation, the briefing in litigation occurred in the deck action? And counsel answered only this. Insurance company counsel said, quote, we know it occurred prior to the final order. And that's all he said. He didn't give her the facts. And so she in fact held that it was waived at that time. Now I realize that on motion for consideration, she said that she really should have ruled on the merits of that preclusion issue at that time, because even though it was late, you ought to be able to bring up matters even though they weren't briefed at summary judgment. But then, even then in your briefing to the motion in limine, you didn't, you finally made the argument that it occurred well before the decision was made in the deck action. But not until your motion for reconsideration do you even tell them, tell the district court that it was, that assignment occurred before summary judgment was filed in the deck action. And even then in the motion for reconsideration, you don't cite any of these capacity cases. You don't cite Zayers v. Cruz or any other of the capacity cases. And you don't even cite the exceptions to the general rule that preclusion doesn't bar a non-party. So that even now on appeal, while you do argue the exceptions under the general rule, you don't argue the capacity cases at all. And you don't cite, and this is the crucial thing, you got to show clear error of law. You don't cite a single case that's anywhere near what this case is. So I'm worried that you can't meet, satisfy this, the narrow standard of review to survive and get a reversal of the district court's denial of your motion for consideration. I'm real sorry that took me so long, Judge Wilson. If the courtroom decadal, you know how long that took me. I'd like you to consider giving both parties a little more time if you don't mind. All right. We'll extend the time. Mr. Turner, would you like to respond to the question? Yes. Thank you, Your Honor. Working my way through this, there was the argument that the sellers, as Garner's asking me, are standing in Durham's shoes as it pertains to coverage, and Durham had no coverage. And so that argument was made prior to the trial. And so I think that addresses that concern. So this issue about coverage to Durham was brought up prior to the trial in the motion in limine. The adequate representation portion of the privity was specifically addressed when I argued that it was the same attorneys arguing the case for the seller. You did say, quote, same attorneys, same people. You did say that much. I acknowledge that. And I think we would have to agree that there's been no contention that my friend and colleague, Mr. Edge, was not adequate in his representation of the sellers in the initial case. And they haven't made any contention that they were inadequate counsel, obviously, because they're not. So the adequate representation portion of privity attaches in going back to the deciding of the Taylor case that would set out the six different ways that privity can attach as far as the full and fair opportunity to litigate portion of privity. That was addressed. You are correct that I didn't make this point on the motion to reconsider. So I think that corrects any lack of error, both about how there was a lack of obligation. Nationwide had a lack of obligation to Durham. And so we have to look at it to that analysis. And I think if you go back and look at this own court's decision in like State Farm versus King Sports, which tracks the analysis, always comes back to what is the obligation owed to the insured. And, for instance, in the King Sports case, this court denied the injured party coverage under the policy because the insured had breached the cooperation clause. And it never got to whether or not their in those cases that are cited in the brief, what they all show is that before you look at anything, you have to look at whether or not coverage is owed. And in this case, there's no dispute that for these damages, the property damages to the seller's home, there is no obligation owed by Nationwide to its insured Mr. Durham. And once that is answered, then there's no coverage. And so there's no coverage for the sellers individually, there's no coverage for the sellers in their capacity as Garner's designee. And in fact, the assignment did occur prior to the well before the summary judgment in the declaratory judgment action. So what that means is if you read the trial court's opinion, where it granted the motion to reconsider, but then denied the motion in limine, what she says is that Garner's day in court is sort of the primary concern. But what this court has held and the Alabama Supreme Court has held when it looks at these issues is that it's whether or not an obligation is owed to the insured. And in this case, because there was no coverage, the sellers as Garner's designee can't recover. In fact, the sellers individually took a consent judgment against Garner for $100,000. Then they ultimately took a judgment, a consent judgment of $250,000 against Durham for the damages that Durham caused. In the trial of this case, judgment was entered for $250,000. So we know that it was entered for the property damages to the seller's house. And we know that Nationwide owes no obligation to Durham for the damages to the seller's house because of the declaratory judgment action, because there was a judgment on the merits. All right, Mr. Turner, have you completed your argument? I have. Thank you. All right. Thank you. And we'll hear from Mr. Edge. Mr. Edge, are you there? Yes, I am, Your Honor. I'm sorry. The line just became unmuted. I apologize. Good morning, Your Honors, and may it please the court. My name is Arthur Edge. I represent the affilee, Ronald Sellers. We are asking that this court affirm the district court's denial of the evidence of clear error by the court. I would like to begin by talking about the obligation that Nationwide had to its insured Durham. We find ourselves in this posture because the original insurance counsel for Nationwide failed to name Gardner as an essential party in the declaratory judgment action. That is Nationwide's duty under the law in Alabama, as far as I know, all the other jurisdictions, to bring all parties into the litigation which it believes have an interest in the outcome. Nationwide was certainly aware of Gardner. It had been in the litigation with Gardner as representative for Durham since 2008. But wasn't the prior to the DEC action, wasn't the, didn't Gardner then assign his rights to the DEC action being initiated? No, Your Honor, the DEC action was well underway by the time the assignment took place. In fact, one of the things we looked for was trying to find any case in any circuit that dealt with an assignment where legal claims had been assigned from one party to we could find none. In fact, the whole Essanore, Essany situation as it is raised by Nationwide in this case is the reverse of the legal geometry in which every other assignment case dealt with any court that I can find exists insofar as steps taken by the Essanore to impair the rights of its is saying that Sellers, the Essany, its actions should affect what Gardner as the Essanore was passing off to them. And I simply cannot find any legal authority to support that proposition. In fact, as Nationwide continually points out the order in the declaratory judgment action order, the court was very specific in that order to say that because this arose the DEC action, the default judgment against Durham arose that no other party would be bound by this finding. And that's just straight up Alabama law that Daniel versus Harley's when there's a default against an insured party on the coverage issue. A third party, an injured party is not going to be precluded who is not a party of litigation to come forward and pursue coverage. And that's exactly what we have here. Gardner was not a party. Gardner's common law indemnity claims that he assigned to Sellers were never litigated in that DEC action. And so if we look at the CSX tests, they don't get past, they being Nationwide, don't get past that the matter was a litigated requirement. This is Judge Wilson. Didn't the district judge analyze whether the parties are in privity under federal privity exceptions to the same party requirement based on federal law? Isn't the court required to make that determination based on Alabama law? The coverage action arose in Alabama. And the way I read CSX versus General Mills when deciding the preclusive effect of a federal court judgment based on diversity, the court has to apply the issued preclusion rules of the forum where the federal court exercise diversity doesn't it? It does, Your Honor. And the Alabama test, the four point test in Alabama is virtually identical. But isn't the issue that the trial court did not apply Alabama law? Your Honor, I think that's a distinction without a difference with all due respect, because the federal law and the Alabama law, if you put them side by side, are identical, virtually identical. The language is slightly different. But you concede that he did not or she did not apply Alabama law? I think that is probably the case, Your Honor. I don't think it changes the outcome, though, because again, the four part test, whether you are looking at CSX or the Alabama cases, it is an identical, same four points. Remind me what Hunter versus Leeds says. Didn't we say that in Hunter versus Leeds that Alabama employs a more expansive definition of privity than federal law does? Well, I'm switching from CSX to the privity. Okay. I'm having a little difficult to follow in there. I apologize. First of all, to Judge Legola's point, I do want to point out that nationwide concedes that the Alabama law on registered or collateral estoppel is substantially the same as the federal law. You can answer Judge Wilson's question because I'm interested in the answer. And moving to the privity, it is, I think, slightly more expansive, but they don't argue the Alabama law. Nationwide is arguing the federal law in their briefs under Taylor. And incidentally, two of the cases in Taylor, that are cited in Taylor, Richardson and Leeds, have the privity exceptions. The assignment that they claim is the substantive legal relationship. If we look at the language in Taylor, it requires that that relationship pre-exists, which it did not in this case. The assignment did not take place until the litigation was well underway. What case holds that? I couldn't find any case, this is Judge Anderson, I couldn't find any case that talked about whether the assignment had to occur or the privity had to arise before the prior case that's claimed to be reclusion was even filed. I found no case addressing that issue. Did you say there is one? Your Honor, I am looking at Taylor versus Sturgill, 553 U.S. 880, where Judge Ginsburg is going through the six-part test. And I quote, second, non-party preclusion may be justified based on a variety of pre-existing, quote, substantive legal relationships, close quote, between persons. That doesn't say whether it pre-exists the filing or as opposed to the actual litigation, does it? It does not, but I think when you look at the examples that Judge Ginsburg gives in the opinion, it does clear that up some. She talks about the idea of preceding and succeeding owners of property, Bailey and Bailor, Essany and Essanor. If we look at this court's decision in axiom, once again, it was successive owners of property all pre-existing the litigation. And as I said, we could not find any case where an assignment or a succession in interest or bailment took place during the course of the litigation that was sufficient to create that legal relationship. There was a discussion of the adequacy of representation. And I think that the argument made by Nationwide misses the point somewhat. It's really not the adequacy of the counsel as much as it is the capacity of the party that was in the first makes it clear that there is a two-part test. And to quote the case, at a minimum, one of the two has to be met if the preclusive effect is going to pass on to the second party. One, the person in the first litigation has to know that they are acting in a representative capacity, period. And then there is the idea that there have to be special procedures in place to protect non-parties. And the court goes on to give examples of where that could happen, a properly conducted class action, and then suits by trustees, guardians, and people with fiduciary relationships. So the Supreme Court has made an extraordinarily narrow window in terms of adequate representation if there's going to be preclusive effect attached to a non-party like Gardner was here. Again, it goes back to the idea that Nationwide failed to name Gardner in the original deck action. Had they done so, we wouldn't be having this discussion. It's simply an effect of them failing to bring Gardner in as an essential party and litigating or having bought his state court claims, which are different from the Sellers. They're different from the Sellers before the court in the deck action. Well, this is Judge Wilson. And let me tell you the concern that I have. If Alabama's exceptions differ from the federal exceptions, and Judge Beaudry applied the federal exceptions, she applied the wrong standard of law. And if she applied an erroneous legal standard, wouldn't that constitute an abuse of her discretion? And the case ought to be reversed and go back so that she can apply the correct standard of law? Your Honor, I don't see that argument being made by Nationwide. But Nationwide did in fact make that argument because in their brief, they argue that the district court failed to apply Alabama's, quote, expansive view of privity. They also argued that their motion to reconsider the motion and limine as well. I wasn't sure of that. And I would like to know the answer. Did the insurance company make the argument that Alabama law applied in the district court? Your Honor, I don't believe that came up until the reply brief again. That was raised for the first time in the reply brief, as best I can tell. But in the district court, in the reply brief, in the district court? I believe in this appeal, Your Honor. So the answer is yes. Judge Lagoa is suggesting that the argument that Alabama law applies was made in the district court. In the motion and limine, docket entry 77 at page 10. That's my answer. Thank you. Thank you, Judge Lagoa. I apologize. I didn't have that before me. The problem I think I'm having with that is that Nationwide has failed to point out what part of Alabama's definition of privity would have changed. Two minutes remaining. You have two minutes, Mr. Hatch. Thank you, Your Honor. When Nationwide argues the case here in the appeal, it is arguing all federal points of law, the Taylor standards. But it's also arguing in the initial brief, and you can maybe answer this, which is it specifically says that the district court, this is the initial brief, the district court failed to address whether any of the six exceptions to Alabama's expansive definition of privity apply. Instead, its entire analysis was based on its determination that Gardner as an assigner could be not bound by the seller's prior actions. However, the court failed to apply Alabama's expansive view of privity. That's in the initial brief. Yes, Your Honor, I see that. Again, I go back to Nationwide's own admission in its brief that the Alabama law is substantively the same. And I think that's where I'm getting hung up, is that they failed to point out what difference in Alabama law, as opposed to the federal law, would change any outcome in this matter. As I said, they turn around and then begin arguing the Taylor exceptions. So that's why we don't see that there would be any change in the outcome of the matter. All right. Thank you, Mr. Edge. We'll see if Mr. Turner can address that matter on rebuttal. Thank you, Your Honor. On rebuttal, I'll start with saying that I respectfully disagree with Mr. Edge's comments that it was different damages for the sellers individually and the sellers as Gardner's assignee. In fact, if you look at the record of the oral argument for the motion in limine, counsel for the sellers states that they're seeking indemnification for the property damage to their home. And the court even sort of summarizes and says, okay, that would be property damage to their home. And the response is, yes, ma'am. The court, he personally didn't suffer or you don't know the property damage. Right. So they are seeking recovery for the property damage to the seller's home. And the court itself acknowledged that the sellers were in privity with the sellers as the assignees of Gardner. On page 13, line five, she says they are certainly are in privity today. So the question becomes, when did they have privity? Well, their last transaction between each other was in October of 2011. The motion for summary judgment wasn't filed until 2012. So by the time that the issues were truly litigated, Gardner had given away his day in court. He doesn't get a day in court because it's owned by the sellers. And the issue is, when did the property damages to the seller's home first manifest? Because that impacts the coverage. Under 2723-2, that's how we have to look at that. And if we look at Judge Green's opinion, after he mentions the default against Durham, he goes on to talk about how it addresses all the coverage issues between Nationwide and the sellers and all of the coverage issues that exist in this case. There are no coverage issues that aren't addressed in the Judge Green opinion that was obviously adopted by Judge Probst. And at the end of it, he says the sellers failed to point to any evidence reasonably supporting such a distinction between the genesis of the damage. So he's talking about property damage to their home. The very next sentence, he says Nationwide is entitled to summary judgment on its claim for declaratory relief, providing that it is not obligated to identify Durham should it be found liable to the sellers. So if we look at Judge Green's opinion, it is the totality of coverage expanded or created through waiver or estoppel. In this case, the property damage, there's no obligation to the damages that the sellers, as Garner's asking me, were awarded by the jury. In fact, the jury answered the exact same question that Judge Green answered. And it was the same lawyers in the same courthouse looking at the same issues. And so that's the adequate representation portion that establishes privity. Even Judge Probst in his final order, which was not appealed by the sellers in any capacity, the court further orders and directs that Nationwide Mutual Fire Insurance Company has no obligation to defend or identify either of the defendants with reference to the subject matter of this action. The subject matter was the property damage to their house. That was litigated and it resulted in a 24-page summary judgment opinion. And the verdict in this case was for the exact same thing that was addressed in Judge Green's opinion. This case is under 2723-2. They can't recover because Nationwide has no obligation to Durham. And in the court's analysis of the federal court's analysis and the Alabama state court's analysis, it's always what is the foundational obligation between the carrier and the insured? And in this case, there is none, so there can be no recovery. All right. We have your argument, Mr. Turner. Thank you. And thank you, Mr. Edge. And that completes the arguments for this morning. And the court will be in recess until 9 o'clock tomorrow morning. Thank you.